OPINION OF THE COURT
Bentley Kassal, J.
*378 ISSUE
Petitioner moves for an order directing the Department of Finance of the City of New York to refund excess real property taxes paid for the years July, 1967 through June, 1973.
The issue presented (which apparently has not been previously considered by the courts in this State) is whether an application for refund, pursuant to subdivision 3 of section 726 of the Real Property Tax Law, requires that all filing requirements, including proof of payments, be completed within the three-year period following entry of the final order directing refund.
FACTS
Following a settlement with the Tax Commission, reducing real property tax assessments for the years 1967 through 1973, an order to that effect was entered on September 22, 1975. On September 13, 1978, petitioner submitted a certified copy of the final order to apply for audit and refund of tax by the Finance Department of the City of New York. Subsequently, on or about December 13, 1978, petitioner attempted to file proof of payment of the taxes in question by submitting paid bills and canceled checks to the Bureau of Refunds and Adjustments. The entire application was rejected as being untimely and barred by the Statute of Limitations.
Subdivision 3 of section 726 of the Real Property Tax Law specifies that: "Application [for refund, authorized by final court order] must be made * * * within three years after the entry of such order”. The Real Property Tax Law does not state how such application is to be made, but the rules promulgated by the Department of Finance direct that an application must consist of a copy of the final order, accompanied by documented evidence of the original receipted bills and canceled checks covering payment of the taxes involved.
THE LAW
Neither party has cited controlling law in support of its position, and there appear to be no reported decisions resolving this issue. The only case this court has found which discussed the statute in question is Matter of Wells v Board of Assessors of County of Nassau (67 Misc 2d 804). In that case, the Supreme Court, Nassau County, held that mere service of the judgment was not tantamount to an application for audit *379 and payment. However, this case is clearly distinguishable on its facts from the present one. The court, in Wells (supra, p 805), stressed that: "Under the last decretal paragraph of the judgment the respondent’s officer could make payment of the refunds only upon proof that the taxes had been paid.” (Emphasis added.) However, in our case, the final order of the instant certiorari proceeding made no similar express direction. It only provided that there be a reduction of real property assessment, correction of the assessment roll and payment to petitioner of the amounts, if any, paid by petitioner as taxes against the erroneous assessment in excess of what the taxes would have been if the assessment had been made as determined by the order.
The respondent has attempted to justify its refusal of the refund application on the basis of noncompliance with the "statutory mandate” requiring that the initial application be accompanied by substantiation of payment, citing the Manual of Refund Procedures, published by the Department of Finance, as the authority.
Admittedly, the Finance Commission is authorized under the provisions of section 1105 of the New York City Charter to establish rules, regulations and administrative procedures. However, the authority so conferred is administrative, not legislative (Acorn Employment Serv. v Moss, 292 NY 147, 153) and any rules should be designed to properly and reasonably implement the legislative policy of the State. (Matter of Natelson v Portfolio, 291 NY 290, 295.) Where such rules are unreasonable or in derogation of the statutes, they will not be enforced by the courts. (See, e.g., People ex rel. Relmar Operating Corp. v Mills, 65 NYS2d 194.)
Respondent’s interpretation that its rules must be fully complied with before an application is deemed made for Statute of Limitations purposes is inconsistent with the policy of the State with respect to certiorari proceedings regarding erroneous tax assessment. It is recognized that "[t]he Tax Law relating to review of assessments is remedial in character and should be liberally construed to the end that the taxpayer’s right to have his assessment reviewed should not be defeated by a technicality.” (People ex rel. New York City Omnibus Corp. v Miller, 282 NY 5, 9; see, also, Great Eastern Mall v Condon, 36 NY2d 544.) That policy must extend to the refund process too and technical defects should not defeat a meritorious claim. This is mandated by CPLR 2001, which is applica *380 ble to article 7 proceedings (Great Eastern Mall v Condon, supra, p 548) and which expressly provides that ”[a]t any stage of the action, the court may permit a mistake, omission, defect or irregularity to be corrected, upon such terms as may be just, or, if a substantial right of a party is not prejudiced, the mistake, omission, defect or irregularity shall be disregarded.” (Emphasis added.)
The city had agreed to the reduction of taxes and consented to the entry of the order. Further, it fully participated in the original proceeding and had timely notice of the order. Finally, respondent did not allege or prove any prejudice other than broad statements alleging budgetary hardship which are patently insufficient to outweigh petitioner’s rights.
In light of the broad remedial purpose of article 7, it is appropriate that any doubts be resolved in favor of the taxpayer. While the Statute of Limitations does have a valid purpose in appropriate circumstances, there is no valid purpose for it in this situation where the petitioner gave notice of his intention to apply for the refund authorized by the court order and fairness and equity mandate that respondent not be unjustly enriched. To deny the relief requested would result in an unnecessary forfeiture, which is not favored, and would be clearly inequitable. Accordingly, the motion is granted.
(On reargument, April 2, 1979)
The city’s motion to reargue is granted. In contrast to the original motion where the city offered no judicial authority in support of its position, it has now cited several cases which warrant consideration. Relying heavily on Matter of Valhalla v McGoldrick (259 App Div 812) the city maintains that service of a certified copy of a final order upon the Department of Finance does not constitute an application for refund.
However, a careful reading of the Appellate Division decision (274 App Div 619) and the subsequent reversal in the Court of Appeals in the case of People ex rel. Ottley Estate Corp. v Lilly (302 NY 278) indicates that, by implication at least, Valhalla has been overruled. This is made clear from the sequence of decisions in Ottley. Special Term had held that service of an order, containing language almost identical to that of the final order in this case, amounted to an application for audit and allowance of interest. The Appellate Division, citing Valhalla as "in point” and relying most exclu *381 sively thereon, reversed the order of Special Term. However, the Court of Appeals reversed the holding of the Appellate Division and expressly affirmed that of Special Term. (People ex rel. Ottley Estate Corp. v Lilly, supra.)
Although Ottley dealt with the issue of when interest on a refund began to run, and did not encompass a Statute of Limitations question, it is nonetheless relevant. Since interest runs "only from the date that application for audit and allowance shall have been duly made to the proper fiscal officer” (Tax Law, former § 296, subd 2 [Real Property Tax Law, § 726]), the same event controls both issues. Thus the determination in Ottley that a proper application for refund had been made is equally controlling here.
Neither the Ottley decision nor Valhalla considered the effect of the current regulations of the Department of Finance at issue here since both were litigated before the rules were officially adopted.
In the present case a certified copy of the final order was timely served to apply for audit and refund and the remaining items of proof were supplied approximately 90 days thereafter. The purpose in serving a copy of the order is to establish claimant’s right to recover. This step must clearly be taken within the requisite period. The completion of the other parts of the application are ministerial and not bound by such limitations, either expressly or implicitly. To hold otherwise would be legislating by the Department of Finance or by the court, as discussed in this court’s original decision.
Since there was actual notice of plaintiff’s claim, substantial compliance with the statute and no real prejudice demonstrated by the city, the petitioner should not be barred by the technical defect in complying with the city’s regulations. (Great Eastern Mall v Condon, 36 NY2d 544, supra; cf. Quintero v Long Is. R. R, 31 AD2d 844.) This is not to say that where a party unduly delays in filing the required proof after the three-year period a defense of laches would not lie, but that is not the situation here.
"Statutes of limitations are construed, where possible, so as to give the parties their day in court and should not be defeated by overstrict construction” (Hotaling v General Elec. Co., 16 AD2d 339, affd 12 NY2d 310), especially where, as here, the public policy of the State favors a taxpayer’s right to refund of erroneous assessments. (People ex rel. New York City Omnibus Corp. v Miller, 282 NY 5, supra.)
*382 The other cases cited by the city either rely upon Valhalla or are inapposite.
Accordingly, upon reargument, the court adheres to its original determination.